UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF TENNESSEE
AT KNOXVILLE

MICHAEL EUGENE WEAVER,               )
                                     )
            Plaintiff,               )
                                     )
v.                                   )        No. 3:13-CV-713
                                     )        (MATTICE/GUYTON)
CAROLYN W. COLVIN,                   )
Acting Commissioner of Social Security,      )
                                     )
            Defendant.               )

## REPORT AND RECOMMENDATION

This case is before the undersigned pursuant to 28 U.S.C. § 636(b), Rule 72(b) of the

Federal Rules of Civil Procedure, and the Rules of this Court for a report and recommendation

regarding disposition by the District Court of Plaintiff's Motion for Summary Judgment and

Memorandum in Support [Doc. 16 & 17] and Defendant's Motion for Summary Judgment and

Memorandum in Support [Docs. 18 & 19].  Plaintiff Michael Eugene Weaver seeks judicial

review of the decision of the Administrative Law Judge ("ALJ"), the final decision of the

Defendant Carolyn W. Colvin, Acting Commissioner of Social Security ("the Commissioner").

On September 11, 2009, Plaintiff protectively filed a Title II and Title XVIII application

and a supplemental Title XVI and XIX application with an alleged onset date of September 3,

2009.  [Tr. 134-40; 153].  The Social Security Administration denied Plaintiff's application

initially and upon reconsideration.  [Tr. 69-72; 77-80].  Plaintiff timely filed a request for a

hearing, and appeared before Administrative Law Judge, Joan A. Lawrence, on July 12, 2011

and April 26, 2012, in Knoxville, Tennessee.  [Tr. 83-84; 43; 28].  The ALJ issued an

unfavorable decision on July 12, 2012.  [Tr. 11-27].  Plaintiff filed his appeal of the decision,

which the Appeals Council declined to review on October 17, 2013. [Tr. 8-10; 1-5].

Having exhausted his administrative remedies, Plaintiff filed a complaint with this Court on December 10, 2013, seeking judicial review of the Commissioner's final decision under Section 205(g) of the Social Security Act. [Doc. 1]. The parties have filed competing dispositive motions, and this matter is now ripe for adjudication.

## I.  ALJ FINDINGS

The ALJ made the following findings:

1. The claimant meets the insured status requirements of the Social Security Act through December 31, 2014.

2. The claimant has not engaged in substantial gainful activity since September 3, 2009, the alleged onset date (20 CFR 404.1571 *et seq.*, and 416.971 *et seq.*).

3. The claimant has the following severe impairments: bipolar disorder; depression; anxiety; HIV+, asymptomatic (20 CFR 404.1520(c) and 416.920(c)).

4. The claimant does not have an impairment or combination of impairments that meets or medically equals the severity of one of the listed impairments in 20 CFR 404, Subpart P, Appendix 1 (20 CFR 404.1520(d), 404.1525, 404.1526, 416.920(d), 416.925 and 416.926).

5. After careful consideration of the entire record, the undersigned finds that the claimant has the residual functional capacity to perform light work as defined in 20 CFR 404.1567(b) and 416.967(b) except the claimant could occasionally stoop, crouch, crawl and climb. The claimant could perform work requiring only simple instructions, concentrate and persist for two-hour periods and changes in the work environment should be gradually introduced into the work environment. The claimant should avoid interaction with the general public and coworker/supervisor interaction is infrequent and casual.

6. The claimant is unable to perform any past relevant work (20 CFR 404.1565 and 416.965).

2

7. The claimant was born on June 22, 1968 and was 41 years old, which is defined as a younger individual age 18-49, on the alleged disability onset date (20 CFR 404.1563 and 416.963).

8. The claimant has a limited education and is able to communicate in English (20 CFR 404.1564 and 416.964).

9. Transferability of job skills is not material to the determination of disability because using the Medical-Vocational Rules as a framework supports a finding that the claimant is "not disabled," whether or not the claimant has transferable job skills (See SSR 82-41 and 20 CFR Part 404, Subpart P, Appendix 2).

10. Considering the claimant's age, education, work experience, and residual functional capacity, there are jobs that exist in significant numbers in the national economy that the claimant can perform (20 CFR 404.1569, 404.1569(a), 416.969, and 416.969(a).

11. The claimant has not been under a disability, as defined in the Social Security Act, since September 3, 2009, through the date of this decision (20 CFR 404.1520(g) and 416.920(g)).

[Tr. 16-21].

## II. DISABILITY ELIGIBILITY

To qualify for SSI benefits, plaintiff must file an application and be an "eligible individual" as defined in the Act. 42 U.S.C. § 1382(a); 20 C.F.R. § 416.202. An individual is eligible for SSI benefits on the basis of financial need and either age, blindness, or disability. See 42 U.S.C. § 1382(a).

"Disability" is the inability "[t]o engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than twelve months." 42 U.S.C. § 1382c(a)(3)(A). An individual shall be determined to be under a disability only if his physical or mental impairment or impairments are of such severity that he is not only unable to do his previous work but cannot, considering his age, education, and work

3

experience, engage in any other kind of substantial gainful work which exists in the national

economy, regardless of whether such work exists in the immediate area in which he lives, or

whether a specific job vacancy exists for him, or whether he would be hired if he applied for

work.  42 U.S.C. § 1382c(a)(3)(B).

Disability is evaluated pursuant to a five-step analysis summarized as follows:

1.  If claimant is doing substantial gainful activity, he is not disabled.

2.  If claimant is not doing substantial gainful activity, his impairment must be severe before he can be found to be disabled.

3.  If claimant is not doing substantial gainful activity and is suffering from a severe impairment that has lasted or is expected to last for a continuous period of at least twelve months, and his impairment meets or equals a listed impairment, claimant is presumed disabled without further inquiry.

4.  If claimant's impairment does not prevent him from doing his past relevant work, he is not disabled.

5.  Even if claimant's impairment does prevent him from doing his past relevant work, if other work exists in the national economy that accommodates his residual functional capacity ("RFC") and vocational factors (age, education, skills, etc.), he is not disabled.

Walters v. Comm'r of Soc. Sec., 127 F.3d 525, 529 (6th Cir. 1997) (citing 20 C.F.R. §

404.1520).  Plaintiff bears the burden of proof at the first four steps.  Walters, 127 F.3d at 529.

The burden shifts to the Commissioner at step five.  Id.  At the fifth step, the Commissioner must

prove that there is work available in the national economy that the claimant could perform.  Her

v. Comm'r of Soc. Sec., 203 F.3d 388, 391 (6th Cir. 1999) (citing Bowen v. Yuckert, 482 U.S.

137, 146 (1987)).

## III.     STANDARD OF REVIEW

When reviewing the Commissioner's determination of whether an individual is disabled

4

pursuant to 42 U.S.C. § 405(g), the Court is limited to determining "whether the ALJ applied the correct legal standards and whether the findings of the ALJ are supported by substantial evidence." Blakley v. Comm'r of Soc. Sec., 581 F.3d 399, 405 (6th Cir. 2009) (citing Key v. Callahan, 109 F.3d 270, 273 (6th Cir. 1997)). If the ALJ applied the correct legal standards and his findings are supported by substantial evidence in the record, his decision is conclusive and must be affirmed. Warner v. Comm'r of Soc. Sec., 375 F.3d 387, 390 (6th Cir. 2004); 42 U.S.C. § 405(g). Substantial evidence is "more than a scintilla of evidence but less than a preponderance; it is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." Rogers v. Comm'r of Soc. Sec., 486 F.3d 234, 241 (6th Cir. 2007) (quotation omitted); see also Richardson v. Perales, 402 U.S. 389, 401 (1971) (quoting Consol. Edison v. NLRB, 305 U.S. 197, 229 (1938)).

It is immaterial whether the record may also possess substantial evidence to support a different conclusion from that reached by the ALJ, or whether the reviewing judge may have decided the case differently. Crisp v. Sec'y of Health & Human Servs., 790 F.2d 450, 453 n.4 (6th Cir. 1986). The substantial evidence standard is intended to create a "'zone of choice' within which the Commissioner can act, without the fear of court interference." Buxton v. Halter, 246 F.3d 762, 773 (6th Cir. 2001) (quoting Mullen v. Bowen, 800 F.2d 535, 545 (6th Cir. 1986)). Therefore, the Court will not "try the case de novo, nor resolve conflicts in evidence, nor decide questions of credibility." Garner v. Heckler, 745 F.2d 383, 387 (6th Cir. 1984).

In addition to reviewing the ALJ's findings to determine whether they were supported by substantial evidence, the Court also reviews the ALJ's decision to determine whether it was reached through application of the correct legal standards and in accordance with the procedure mandated by the regulations and rulings promulgated by the Commissioner. See Wilson v.

5

Comm'r of Soc. Sec., 378 F.3d 541, 544 (6th Cir. 2004). The Court may, however, decline to reverse and remand the Commissioner's determination if it finds that the ALJ's procedural errors were harmless.

An ALJ's violation of the Social Security Administration's procedural rules is harmless and will not result in reversible error "absent a showing that the claimant has been prejudiced on the merits or deprived of substantial rights because of the [ALJ]'s procedural lapses." Wilson, 378 F.3d at 546-47. Thus, an ALJ's procedural error is harmless if his ultimate decision was supported by substantial evidence *and* the error did not deprive the claimant of an important benefit or safeguard. See Id. at 547.

On review, Plaintiff bears the burden of proving his entitlement to benefits. Boyes v. Sec'y. of Health & Human Servs., 46 F.3d 510, 512 (6th Cir. 1994) (citing Halsey v. Richardson, 441 F.2d 1230 (6th Cir. 1971)).

## IV.    EVIDENCE

### A.    *Medical Evidence*

On September 11, 2009, Plaintiff protectively applied for disability insurance benefits from the Social Security Administration, with an alleged onset date of September 3, 2009. [Tr. 134-40; 153]. Plaintiff completed the ninth grade and stated on his Disability Report that he could read, write, and understand English. [Tr. 150; 145]. Plaintiff has past relevant work experience as a short order cook. [Tr. 147]. He reported that he ceased working due to his conditions of depression, bipolar disorder, and HIV. [Tr. 146].

Plaintiff has received treatment at Cherokee Health Systems ("CHS") since 2008. [Tr. 269-302]. On January 27, 2009, CHS physician, Dr. Elizabeth Reid diagnosed Plaintiff with bipolar disorder, depression, HIV, and a Global Assessment of Functioning ("GAF") of 50 and

6

diagnosed 300 mg of lithium carbonate. [Tr. 292]. On March 16, 2009, Dr. Reid noted that Plaintiff continued to be depressed, "especially in the face of significant stressors," and on August 20, 2009 she found the same, noting that Plaintiff was currently homeless and "not getting along with his sister and mother." [Tr. 285; 277].

On September 23, 2009, Plaintiff sought medical treatment and established a primary care relationship with Dr. Fokens at CHS. [Tr. 272]. During an examination on February 3, 2010, Plaintiff discussed his disability appeal and made an "action plan" with his physicians. [Tr. 342]. He was advised at that time that CHS would not provide a letter "saying he cannot work." [Id.]. He returned to Dr. Fokens on February 24, 2010 complaining of neck and hip pain on his left side. [Tr. 336]. Dr. Fokens noted that these were chronic complaints stemming from a motor vehicle accident in the 1990's requiring surgical implantation of a femoral rod. [Id.]. Dr. Fokens suggested a MRI to further assess Plaintiff's injuries, which showed no evidence of acute fracture or dislocation. [Tr. 337-39]. On June 1, 2011, Plaintiff returned to Dr. Fokens complaining of chronic headaches. [Tr. 400]. A CT scan showed no intracranial abnormality and Dr. Fokens prescribed 20mg of propranolol. [Id.].

Plaintiff also received treatment from Dr. Suzanne Bailey of CHS, and on July 1, 2011 she noted that Plaintiff "reported marked deactivation of daily activities. However, he reported that he has been socializing with and working to take care of two older men in his apt. complex." [Tr. 616]. She found his mood to be depressed but absent suicidal or homicidal thoughts. [Id.]. She stated that he occasionally used marijuana and had recently used "crack and benzo." [Id.].

In 2009, Plaintiff sought treatment at the Center for Excellence for HIV management and depression. [Tr. 254-57]. On July 29, 2009, he was found to have "[a]symptomatic HIV positive disease doing well on current therapy" and an underlying depressive disorder. [Tr. 254].

7

Upon a follow up visit on January 12, 2010, Dr. Rasnake noted that Plaintiff's HIV continued to be asymptomatic and that he was doing well on his antiretroviral therapy. [Tr. 327]. He also noted Plaintiff's continuing problems with depression and anxiety and found that Plaintiff had suffered a persistent lymph adenopathy for the past two months. [Id.]. Plaintiff returned in 2011 with continued complaints of neck and back pain, chronic headaches, and depression. [Tr. 588-89]. Dr. John Narro noted that his headaches were improved with the introduction of blood pressure medicine and that his HIV continued to be asymptomatic, although he had a "detectable viral load whether related to incomplete adherence to antiretroviral therapy or virologic blip." [Tr. 589-90].

On September 4, 2009, Plaintiff underwent an appendectomy at Fort Sanders Medical Center. [Tr. 478]. A follow up CT scan was recommended to rule out inflammatory bowel disorder or infectious colitis. [Tr. 474]. The results revealed inflammation of the right lower quadrant, suspected appendicitis, and no nephrolithiasis or obstructive uropathy. [Tr. 511-12].

On November 5, 2009, Dr. John H. Mather submitted a Medical Consultant Analysis. [Tr. 303-06]. He found Plaintiff's physical impairments to be non-severe, noting that although Plaintiff was HIV positive, he was asymptomatic without any other negative findings. [Tr. 306]. Dr. George T. Davis submitted a psychiatric analysis on January 4, 2010 and found that Plaintiff was only moderately limited in his ability understand, remember, and carry out detailed instructions. [Tr. 307-23; 321]. He assessed that Plaintiff could perform simple, multistep tasks, maintain attention and concentration for at least two hours at a time, interact appropriately with others, and adapt to routine workplace changes. [Tr. 323]. He found that Plaintiff was moderately limited in his abilities to understand, remember, and carry out detailed instructions and interact appropriately with the public. [Tr. 321-22].

8

On May 7, 2010, Dr. Kanika Chaudhuri submitted a Medical Consultant Analysis and noted that Plaintiff was homeless and able to perform daily activities such as laundry, cooking, shopping, paying bills, and watching television. [Tr. 348-51]. She found that Plaintiff's allegations of pain were "not completely credible" and that his impairments in combination were non-severe. [Tr. 351].

On June 9, 2010, Parkwest Medical Center conducted an MRI of Plaintiff's lumbar spine to investigate his history of neck and arm pain. [Tr. 575]. The results revealed mild disc degeneration at L4-5 "with symmetric disc bulging resulting in mild to moderate lateral recess stenosis bilaterally." [Id.]. There was also evidence of "progressive facet joint hypertrophic changes, most prominent at L5-S1." [Id.]. The remaining discs were normal. [Id.].

Jodi Castellani, licensed psychiatrist, conducted a disability analysis exam on August 18, 2010. [Doc. 17-1].[1] She diagnosed Plaintiff with bipolar disorder, nicotine dependence, alcohol dependence (full remission), HIV, rule out dementia secondary to HIV, rule out learning disorder NOS, high cholesterol, and back pain. [Id. at 4]. She found that Plaintiff had moderate limitations in his ability to understand and remember, mild to moderate limitations in his ability to maintain concentration and persistence, mild to moderate limitations in his ability to appropriately interact, and moderate limitations in his ability to adapt. [Id. at 4-5]. Dr. Rebecca A. Hansmann submitted a psychiatric review on August 30, 2010 and diagnosed Plaintiff with bipolar disorder. [Tr. 365-81]. She similarly found that Plaintiff was moderately limited in his ability to maintain social functioning, concentration, persistence, and pace, and engage in daily activities. [Tr. 375].

---

[1] The Court notes that this report is made part of the record as exhibit to Plaintiff's Motion for Summary Judgment and Memorandum in Support, [Doc. 16 & 17]. Plaintiff requested this report be added to the record in a pre-hearing memorandum submitted on July 7, 2011. [Tr. 221-25]. However, it is unclear whether Plaintiff ever submitted or attached this report as an exhibit and it appears the request was never granted.

On September 17, 2011, Dr. Noah Robbins submitted a physical assessment, finding that Plaintiff was limited to lifting twenty pounds due to his cervical and lumbar degenerative disc disease. [Tr. 582-84]. He assessed that Plaintiff could stand, walk, or sit for up to six hours at a time and had no limitation in his movement, manipulation, or ability to reach. [Tr. 584]. He found mild limitations in Plaintiff's ability to stoop, climb, crawl, or crouch. [Id.].

Dr. Bailey of CHS submitted a Medical Source Statement on February 11, 2013, stating that Plaintiff had been under her care for his bipolar disorder since May 2010. [Tr. 646]. She noted that:

> [H]e attends appointments as scheduled, actively engages in treatment, and takes medications as prescribed. However, despite his efforts he continues to experience mood symptoms that significantly impact his functioning. Thus, it is my clinical opinion that Mr. Weaver['s] symptoms prevent him from engaging in gainful employment at this time and that it is unlikely he would be able to sustain employment in the near future.

[Id.].

### B. Other Evidence

The ALJ conducted a hearing on July 12, 2011, in which the Plaintiff and his sister, Katherine Reynolds, testified. [Tr. 43]. A second hearing took place on April 26, 2012 in which Plaintiff again testified. [Tr. 28]. The ALJ found that Plaintiff had a RFC to perform light work limited to simple instructions and should avoid interaction with the general public and "coworker/supervisor interaction is infrequent and casual." [Tr. 19]. The Appeals Council declined to review the ALJ's decision on October 17, 2013, giving Plaintiff notice that it had received Dr. Bailey's Medical Source Statement as additional evidence and incorporated it into the record. [Tr. 1-5].

## V.     POSITIONS OF THE PARTIES

The Plaintiff claims that the ALJ's RFC determination is not based on substantial evidence and that she specifically erred in failing to consider Dr. Castellani's report, Plaintiff's alleged illiteracy, and Ms. Reynolds's testimony.   The Plaintiff contends that the Appeals Council erred in not remanding the case based on new and material evidence, namely Dr. Bailey's Medical Source Statement.   The Plaintiff further argues that the ALJ erred at step five by relying on the Medical-Vocational Guidelines ("Grids") as opposed to hearing testimony from a vocational expert.

The Commissioner responds that the ALJ's RFC determination was based on substantial evidence because she considered the record as whole, weighing Plaintiff's treatment records, daily activities, and giving great weight to state agency consultants.   The Commissioner specifically argues that Dr. Castellani's report was never considered due to Plaintiff's failure to submit it as part of the record, that Ms. Reynolds's testimony was duplicative of the Plaintiff's and thus implicitly dismissed under the ALJ's credibility determination of the Plaintiff, and that Plaintiff failed to prove that he was illiterate.   The Commissioner further contends that remand is not necessary for review of Dr. Bailey's letter because her Medical Source Statement is immaterial.   Finally, the Commissioner argues that the ALJ properly utilized the Grids.

## VI.     ANALYSIS

The Court will address each of the issues presented by Plaintiff in turn.

### A.  Plaintiff's Residual Functional Capacity Assessment

The Court finds that the ALJ's RFC determination is based on substantial evidence and that her evaluation of the medical evidence adhered to agency procedures.   An ALJ is responsible for determining a plaintiff's RFC after reviewing all the relevant evidence of record.

11

<u>Rudd v. Comm'r of Soc. Sec.</u>, 531 F. App'x 719, 728 (6th Cir. 2013). An ALJ may consider both medical and non-medical evidence in reaching an RFC determination. <u>Id</u>.

A plaintiff's RFC is the most a plaintiff can do despite his or her impairments. 20 C.F.R. § 404.1545(a)(1). In other words, the RFC describes "the claimant's residual abilities or what a claimant can do, not what maladies a claimant suffers from—though the maladies will certainly inform the ALJ's conclusion about the claimant's abilities." <u>Howard v. Comm'r of Soc. Sec.</u>, 276 F.3d 235, 240 (6th Cir. 2002). Moreover, "'[a] claimant's severe impairment may or may not affect his or her functional capacity to do work. One does not necessarily establish the other.'" <u>Griffeth v. Comm'r of Soc. Sec.</u>, 217 F. App'x 425, 429 (6th Cir. 2007) (quoting <u>Yang v. Comm'r of Soc. Sec.</u>, No. 00–10446–BC, 2004 WL 1765480, at *5 (E.D. Mich. July 14, 2004)).

A court will not disturb an ALJ's RFC determination so long as the finding is supported by substantial evidence. <u>Jones v. Comm'r of Soc. Sec.</u>, 336 F.3d 469, 477 (6th Cir. 2003). However, in determining a claimant's RFC, the ALJ must "make findings of fact" as to a claimant's functional and physical limitations. <u>Simpson v. Colvin</u>, 3:11-0481, 2013 WL 4456383, at *17 (M.D. Tenn. Aug. 16, 2013) (internal citations omitted). Further, the ALJ "must 'articulate with specificity reasons for the findings and conclusions that he or she makes' to facilitate meaningful judicial review." <u>Wright v. Astrue</u>, 1:07-CV-226, 2009 WL 890051 (E.D. Tenn. Mar. 26, 2009) (quoting <u>Bailey v. Comm'r of Soc. Sec.</u>, 1999 WL 96920, *4 (6th Cir. Feb. 2, 1999)).

Plaintiff is correct in citing to <u>Brooks v. Commissioner of Social Security</u>. [<u>See</u> Doc. 17 at 17]. The ALJ must indeed consider "'whatever in the record fairly detracts from its weight.'" 531 F. App'x 636, 641 (6th Cir. 2013) (citing <u>Garner v. Heckler</u>, 745 F.2d 383, 388 (6th Cir.

1984)). The ALJ may not conduct "a selective reading of the record. 'Substantiality of the evidence must be based upon the record taken as a whole.'" Id.

However, the Sixth Circuit has made clear that the standard of review is highly deferential. See Claiborne-Hughes Health Ctr. v. Sebelius, 609 F.3d 839, 843-44 (6th Cir. 2010) ("Substantial evidence review 'gives the agency the benefit of the doubt, since it requires not the degree of evidence which satisfies the court that the requisite fact exists, but merely the degree which could satisfy a reasonable fact finder.'" (quoting Allentown Mack Sales & Serv., Inc. v. NLRB, 522 U.S. 359, 377 (1998)). In order to determine whether the ALJ's RFC assessment was supported by substantial evidence, the Court looks at whether the ALJ met his investigatory duties. "While an ALJ need not discuss every piece of evidence," he must investigate and consider the evidence in its entirety, especially critical pieces of evidence. Oliver v. Comm'r of Soc. Sec., No. 07-15475, 2010 WL 1002618, at *10 (E.D. Mich. Mar. 2, 2010) (internal citations omitted).

The Court will address each of Plaintiff's specific arguments regarding his RFC assessment in turn.

### 1. Dr. Castellani's examination and report

Plaintiff argues that the ALJ erred in not adding Dr. Castellani's report to the record or addressing it in her opinion. The Court disagrees and finds that even if the ALJ erred in not considering the report in her opinion, such an error was harmless. Plaintiff bears the burden of providing evidence for the RFC assessment. See Her v. Comm'r of Soc. Sec., 203 F.3d 388, 391 (6th Cir. 1999) (noting that "the burden of proof lies with the claimant at steps one through four of the process" and explaining the rationale behind the rule is that "it is not unfair to require a claimant to prove the extent of his impairments").

13

Here, there is no proof that Plaintiff ever submitted Dr. Castellani's report prior to the filing of his dispositive motion and supporting memorandum. [See Doc. 16 & 17]. Although Plaintiff requested that the ALJ review the report in a pre-hearing memorandum dated July 7, 2011, [Tr. 224], there is nothing in the record to show that Plaintiff ever included the report as an exhibit or submitted it to the ALJ. Plaintiff's counsel further failed to discuss or introduce the report at either hearing.

Further, even if the ALJ should have reviewed and discussed Dr. Castellani's report, such an error was harmless. Dr. Castellani did not submit that Plaintiff was any more impaired than other non-treating and non-examining physicians of record. [See Doc. 17-1]. Similarly to the state agency consultants, Dr. Castellani diagnosed Plaintiff with bipolar disorder and found that he had moderate limitations in his ability to understand and remember, mild to moderate limitations in his ability to maintain concentration and persistence, mild to moderate limitations in his ability to appropriately interact, and moderate limitations in his ability to adapt. [Doc. 17-1 at 4-5]; [see Tr. 375] (Dr. Hansmann found that Plaintiff was moderately limited in his ability to maintain social functioning, concentration, persistence, and pace and engage in daily activities); [Tr. 321-22] (Dr. Davis finding similar restrictions, assessing moderate limitations in Plaintiff's ability to understand, remember, and carry out detailed instructions and interact appropriately with the public).

The Plaintiff failed to meet his burden of submitting Dr. Castellani's report, and regardless, even if the ALJ neglected to consider Dr. Castellani's opinion, such an error was harmless. The Court finds that Dr. Castellani's report provides no new information or opinion evidence and would have been unlikely to change the ALJ's decision even if it was included in the record. The Court finds the Plaintiff's argument to the contrary to be without merit.

14

### *2. Plaintiff's alleged illiteracy*

Plaintiff argues that the ALJ erred in failing to consider his illiteracy as a nonexertional impairment. The Court disagrees. The ALJ considered Plaintiff's education at step five and specifically found that Plaintiff "has a limited education[.]" [Tr. 21]. By doing so, the ALJ made an implicit assessment of Plaintiff's ability to read and write. Pursuant to 20 C.F.R. § 404.1564, the Commissioner will evaluate a claimant's education based on six categories: 1) illiteracy; 2) marginal education; 3) limited education; 4) high school education and above; 5) inability to communicate in English; and 6) information about your education. The statute defines "limited education" as "ability in reasoning, arithmetic, and language skills, but not enough to allow a person with these educational qualifications to do most of the more complex job duties needed in semi-skilled or skilled jobs. We generally consider that a 7th grade through the 11th grade level of formal education is a limited education." Id. The ALJ went on to state that he specifically considered Plaintiff's education at step five. [See Tr. 21] (explaining that "[i]n determining whether a successful adjustment to other work can be made, the undersigned must consider the claimant's residual functional capacity, age, education, and work experience").

As explained above, the Plaintiff has the burden to prove he is severely impaired and the extent of his limitations. See Her, 203 F.3d at 391. Here, Plaintiff failed to meet that burden. Although both Plaintiff and his sister, Katherine Reynolds, testified to his alleged illiteracy, [see Tr. 53; 62], the record reveals inconsistencies. The Plaintiff stated on his Disability Report that he can read, understand, and write more than his name in English. [Tr. 145]. His academic records show that although Plaintiff suffered from a learning disability, he could spell, read, and write. [See Tr. 235-242].

15

Further, even if the ALJ erred in not finding the Plaintiff illiterate, such an error was harmless because "[u]nder the Medical–Vocational Guidelines, Rule 202.16, a younger individual who is illiterate and who can do only unskilled jobs is deemed not disabled." Rose v. Comm'r of Soc. Sec., No. 2:12-CV-0354, 2013 WL 1500193, at *7 (S.D. Ohio Apr. 11, 2013) (internal citations omitted); see 20 C.F.R. § Pt. 404, Subpt. P, App. 2 (explaining that with "work functions at the unskilled level, literacy or ability to communicate in English has the least significance.").

Therefore, the Court finds that the ALJ properly considered Plaintiff's education and possible learning or mental impairments in determining his RFC.

### 3. Testimony of Katherine Reynolds

The Plaintiff argues that the ALJ committed harmful error in not considering the testimony of his sister, Katherine Reynolds. The Court finds this argument to be without merit. Primarily, the Court notes that "an ALJ is not required to discuss all the evidence submitted, and an ALJ's failure to cite specific evidence does not indicate that it was not considered." Paskewitz v. Astrue, No. 1:11CV2371, 2012 WL 5845357, at *13 (N.D. Ohio Oct. 29, 2012) (internal citation omitted) (citing Dykes ex rel. Brymer v. Barnhart, 112 F. App'x 463, 467 (6th Cir. 2004)). Further, the Commissioner is correct in explaining that testimony of lay witnesses need not be explicitly addressed when it is repetitive of the plaintiff's assertions. [See Doc. 19 at 9-10]; see also Paskewitz, 2012 WL 5845357, at *14 (noting that failure to address a lay witness's testimony is harmless when duplicative of the claimant's assertions).

Although an ALJ should not "disregard [] without comment" a lay witness's testimony, Maloney v. Comm'r of Soc. Sec., 480 F. App'x 804, 810 (6th Cir. 2012), failure to do so is not necessarily reversible error. See Waters v. Astrue, No. CIV.A. 2:10-213-DCR, 2011 WL

16

3847421, at *4 (E.D. Ky. Aug. 26, 2011) (finding that the ALJ did not err in failing to specifically address lay witness testimony where he stated that he considered the entire record); see also Walker v. Astrue, No. 3:10-CV-542, 2011 WL 6963162, at *11 (E.D. Tenn. Dec. 6, 2011) (internal citations omitted) (noting that an ALJ must only assign weight to lay witness testimony when it is supported by a treating physician opinion).

Here, Ms. Reynolds's testimony is duplicative of her brother's statements. She testified chiefly to the onset of his depression after being diagnosed with HIV, his difficulty with social interaction, and his desire to remain withdrawn in his apartment. [Tr. 62-63]. She stated that Plaintiff will only leave the house when she and her husband "physically make him." [Tr. 63]. She also informed the ALJ that he had trouble reading and writing, and that she had only recently taught him to spell his full name. [Tr. 62]. Ms. Reynolds's further testified to Plaintiff's difficulty in completing tasks and caring for himself. [Tr. 62-63].

The Plaintiff testified similarly, claiming that his anxiety, brought on by his HIV diagnosis, made it difficult for him to leave his home and engage with the public. [Tr. 47-48] He stated that the only people he interacts with are his sister and her husband and that he does not leave his house alone. [Tr. 52; 56]. He further testified that he requires assistance with basic daily activities such as grocery shopping, and only goes to the grocery store with his brother-in-law because he requires his assistance in keeping track of what he's purchasing. [Tr. 56-57].

Not only are the Plaintiff and Ms. Reynolds's testimony similar, the ALJ explicitly stated that Plaintiff's RFC assessment was made "after careful consideration of the *entire* record." [Tr. 19] (emphasis added). The ALJ went on to explain that he considered all the Plaintiff's symptoms and the extent they are "consistent with the medical evidence and other evidence, based on the requirements of 20 CFR 404.1529 and 416.929 and SSRs 96-4p and 96-7p." [Id.].

The Court notes that, pursuant to 20 C.F.R. § 404.1529, "other evidence" includes "statements or reports from you, your treating or nontreating source, *and others* about your medical history, diagnosis, prescribed treatment, daily activities, efforts to work, and any other evidence showing how your impairment(s) and any related symptoms affect your ability to work." (emphasis added).

The Court finds that Ms. Reynolds's testimony was duplicative, thereby relieving the ALJ of an obligation to specifically address her statements. Further, the ALJ stated that she considered the record in full, specifically noting that she considered evidence as outlined in 20 C.F.R. § 404.1529, which includes statements by others about a claimant's symptoms and impairments. Therefore, the Court finds that the ALJ followed agency procedures in weighing all of the evidence and that any error in failing to specifically address Ms. Reynolds's testimony was harmless.

### 4. Consideration of the medical evidence

Finally, the Court finds that the ALJ's overall RFC assessment is supported by substantial evidence. As prescribed by agency procedure, the ALJ considered the record as a whole. She properly considered all of the medical evidence, along with Plaintiff's statements, daily activities, treatment records, and other factors as set forth in 20 C.F.R. §§ 404.1527(c)(2-6) and 416.927(c)(2-6). See 20 C.F.R. §§ 404.1527(c)(2) and 416.927(c)(2) (Where a treating physician opinion does not garner controlling weight, the appropriate weight to be given an opinion will be determined based upon the following factors: length of treatment, frequency of examination, nature and extent of the treatment relationship, amount of relevant evidence that supports the opinion, the opinion's consistency with the record as a whole, the specialization of

18

the source, and other factors which tend to support or contradict the opinion) [2]; see also Jericol Mining, Inc. v. Napier, 301 F.3d 703, 710 (6th Cir. 2002) ("We believe that the same factors that justify placing greater weight on the opinions of a treating physician are appropriate considerations in determining the weight to be given an examining physician's views.")

Here, the ALJ addressed these factors and considered the medical evidence in conjunction with the record as a whole. In regard to Plaintiff's treating physicians, the ALJ explained that "none of [Plaintiff's] mental health providers have opined that he was disabled or unable to function because of a mental health condition." [Tr. 20]. She found that the state agency consultants' opinions, "which are the only remaining mental functional assessments of the claimant's record . . . are likewise more consistent with the overall medical evidence of record and the claimant's reported daily and social activities." [Id.].

In assessing Plaintiff's mental impairments, the ALJ considered Plaintiff's medical and psychological treatment records, noting that "none of his objective scans or tests have revealed any significant abnormalities. None of his treating physicians assigned any specific physical limitations to his ability to function and none opined that he was disabled due to physical impairments." [Tr. 19]. She went on to rely on Dr. Rasnake's assessment that "the claimant was asymptomatic HIV with fully suppressed viral load now that he is antiretroviral therapy compliant." [Id.]. In regards to Plaintiff's mental impairments, the ALJ noted that he "has never

---

[2] A treating physician opinion is usually entitled to controlling weight. See 20 C.F.R. §§ 404.1527(c)(2) and 416.927(c)(2) ("If we find that a treating source's opinion on the issue(s) of the nature and severity of your impairment(s) is well-supported by medically acceptable clinical and laboratory diagnostic techniques and is not inconsistent with the other substantial evidence in your case record, we will give it controlling weight."). However, the treating physician rule is inapplicable where treating physicians have failed to provide medical opinions. If the record is replete with treatment records, but absent any medical opinion regarding functional capacity, treating physicians are not entitled to controlling weight, nor must the court address the factors set forth 20 CFR §§ 404.1527(c) and 416.927(c). See Hazelwood v. Comm'r of Soc. Sec., 2012 WL 5930439, at *4 (S.D. Ohio Nov. 27, 2012) (finding that "[w]ithout any opinion evidence from plaintiff's treating physicians, the Court cannot conclude that the ALJ erred by not applying the factors enumerated in §§ 404.1527(c) and 416.927(c).").

required inpatient treatment and most of his mental health complaints centered on complaints about situational stressors[.]" [Tr. 20].  She went on to note his "conservative treatment in the form of therapy and psychotropic medications[.]" [Id.].

Finally, the ALJ considered Plaintiff's daily activities, such as driving, caring for his neighbors, taking care of household chores, cooking, caring for his personal hygiene, running errands, shopping, managing his money, watching television, listening to the radio, socializing with others, reading, and talking on the telephone.  [Id.].  The ALJ found that the Plaintiff's daily activities "tend[] to negate the degree of his complaints of pain and other subjective limitations." [Id.].

The Court finds that the ALJ's opinion, considered in its entirety, properly addressed the factors set forth in 20 C.F.R. §§ 404.1527(c)(2-6) and 416.927(c)(2-6).  Specifically, the ALJ considered Plaintiff's treatment history, the amount of relevant evidence that supports the medical evidence, the state agency consultants' opinions consistency with the record as a whole, and other factors which tended to support or contradict the medical evidence such as Plaintiff's daily activities and the stressors triggering his depression.  Therefore, the Court finds that the ALJ properly adhered to agency regulations and her RFC determination is supported by substantial evidence.

### B.  New Evidence

Plaintiff asserts that the Appeals Council erred in not remanding the Plaintiff's case based on new and material evidence, namely Dr. Bailey's Medical Source Statement.  The Court disagrees.

The Appeals Council reviews new evidence pursuant to 20 C.F.R. § 404.970, which holds in relevant part:

> (b) If new and material evidence is submitted, the Appeals Council shall consider the additional evidence only where it relates to the period on or before the date of the administrative law judge hearing decision. The Appeals Council shall evaluate the entire record including the new and material evidence submitted if it relates to the period on or before the date of the administrative law judge hearing decision. It will then review the case if it finds that the administrative law judge's action, findings, or conclusion is contrary to the weight of the evidence currently of record.

20 C.F.R. § 404.970. "On appeal this court still reviews the ALJ's decision rather than the Appeals Council's denial of review." Hammond v. Apfel, 211 F.3d 1269, at *3 (6th Cir. 2000). New evidence submitted to the Appeals Council will become part of the administrative record, and if "'the Appeals Council considers the new evidence but declines to review the case, we review the ALJ's decision and determine whether there is substantial evidence in the administrative record, which now includes the new evidence." Cotton v. Sullivan, 2 F.3d 692, 696 (6th Cir. 1993) (quoting Nelson v. Sullivan, 966 F.2d 363, 366 (8th Cir. 1992).

Here, the Appeals Council reviewed Dr. Bailey's Medical Source Statement, incorporated it into the record, and declined to review the ALJ's decision. [Tr. 1-5]. Therefore, the only question before the Court is whether the ALJ's decision is based on substantial evidence in light of Dr. Bailey's Medical Source Statement. The Court finds in the affirmative. The Court is unconvinced that Dr. Bailey's opinion would have impacted the outcome of the ALJ's decision. Dr. Bailey stated that the Plaintiff's "mood symptoms . . . significantly impact his functioning" and that he would be unable to engage in "gainful employment at this time and that it is unlikely that he would be able to sustain employment in the near future." [Tr. 646]. However, the ALJ thoroughly considered the impact of Plaintiff's symptoms and mental impairments in her RFC assessment. [See Tr. 20] (noting that "most of [Plaintiff's] mental health complaints centered on complaints about situational stressors . . . [and] has required only

21

conservative treatment in the form of therapy and psychotropic medications."). The Plaintiff takes issue with the ALJ's statement that "none of his treating mental health providers have opined that he was disabled or unable to function because of a mental health condition." [Tr. 20]; [see Doc. 17 at 21]. However, the Court is not so offended. At the time the ALJ authored this opinion (July 12, 2012), this statement was true. Dr. Bailey's Medical Source Statement was not created until February 11, 2013. [See Tr. 646].

Further, Dr. Bailey's statement contains a determination of disability. Although she addressed the Plaintiff's mood impairments, she concluded the he is unable to "sustain gainful employment." [Tr. 646]. Such a determination of disability is not one for a treating physician but a question reserved solely for the Commissioner. See SSR 96-5P, 1996 WL 374183, at *2 (S.S.A. July 2, 1996) (explaining that the question of whether a claimant is disabled is not a medical issue but instead is an "administrative finding[] that [is] dispositive of a case" and thus reserved for the Commissioner). The ALJ properly addressed the functional limitations raised by Dr. Bailey and had no obligation to adopt her disability determination. To the contrary, the ALJ had an express obligation to form her own opinion of disability. See SSR 96-5P, 1996 WL 374183, at *2. Therefore, the Court finds that Dr. Bailey's Medical Source Statement is immaterial to the ALJ's ultimate decision and substantial evidence supports her determination that Plaintiff is not disabled.

Further, even if the Court were to consider whether Dr. Bailey's Medical Source Statement met the criteria of 20 C.F.R. § 404.970, remand would still be inappropriate. Although Dr. Bailey's opinion "relates to the period on or before the date of the administrative law judge hearing decision," the evidence is neither new nor material. 20 C.F.R. § 404.970. Evidence is considered new only if it was "not in existence or available to the claimant at the

time of the administrative proceeding." <u>Foster v. Halter</u>, 279 F.3d 348, 357 (6th Cir. 2001).

(quoting <u>Sullivan v. Finkelstein</u>, 496 U.S. 617, 626 (1990)). Evidence is material "only if there

is a 'reasonable probability that the Secretary would have reached a different disposition of the

disability claim if presented with the new evidence.'" <u>Foster</u>, 279 F.3d at 357 (quoting <u>Sizemore</u>

<u>v. Sec'y of Health & Human Servs.</u>, 865 F.2d 709, 711 (6th Cir. 1988)).

The evidence is immaterial for the reasons stated above. Dr. Bailey's opinion is not new

because there is nothing in the record or Plaintiff's dispositive motion and supporting

memorandum to show that this opinion was unavailable to the Plaintiff "at the time of the

administrative proceeding." <u>Foster</u>, 279 F.3d at 357. Dr. Bailey states that Plaintiff has been

under her care since May 2010. [Tr. 646]. The Court is unaware of any reason that Dr. Bailey's

medical opinion could not have been requested and submitted to the ALJ prior to the hearing on

April 26, 2012 or anytime before her decision was rendered on July 12, 2012.

Therefore, the Court finds that Dr. Bailey's Medical Source Statement is neither new nor

material, and Plaintiff's argument that her opinion is worthy of remand is without merit.

## C. The Medical-Vocational Guidelines

The Plaintiff asserts that the ALJ's reliance on the Grids was improper because she failed

to account for Plaintiff's nonexertional impairments. [Doc. 17 at 21-24]. The Court finds this

argument persuasive.

The ALJ may rely on the Grids to satisfy step-five when a plaintiff suffers from only

exertional impairments. <u>Jordan v. Comm'r of Soc. Sec.</u>, 548 F.3d 417, 424 (6th Cir. 2008).

Generally, where a plaintiff suffers from nonexertional impairments, use of the Grids alone is

inappropriate. <u>See</u> <u>Abbott v. Sullivan</u>, 905 F.2d 918, 926 (6th Cir. 1990) (explaining that relying

solely on the grids is improper where "a claimant suffers from an impairment that significantly

diminishes his capacity to work, but does not manifest itself as a limitation on strength" such as mental impairments or heightened sensitivities). Reliance on the Grids in the face of nonexertional limitations is only appropriate where "the claimant's nonexertional limitations do not significantly limit the range of work permitted by his exertional limitations." Shelman v. Heckler, 821 F.2d 316, 321 (6th Cir. 1987); see also Moon v. Sullivan, 923 F.2d 1175, 1182 (6th Cir. 1990) ("A mental impairment must produce work-related limitations that significantly affect the claimant's ability to perform a full range of work at a given exertional level before a mental impairment precludes the use of the medical-vocational guidelines.") (citing Buress v. Secretary of Health & Human Servs., 835 F.2d 139, 142 (6th Cir. 1987); Davis v. Astrue, No. 3:11-cv-109, 2012 WL 2064498, at *10 (E.D. Tenn. May 14, 2012) ("a mere presence of a mental impairment does not preclude use of the Grid.").

Here, the question is whether the nonexertional and exertional limitations in Plaintiff's residual functional capacity significantly erode the base of unskilled work. See Adkins v. Comm'r of Soc. Sec., 251 F. App'x 346, 350 (6th Cir. 2007) (stating the inquiry as "whether or not the government has produced substantial evidence showing that jobs exist in the national economy which [p]laintiff can perform"). The Courts finds in the affirmative.

The ALJ found that there were jobs that existed in significant numbers in the national economy that the Plaintiff could perform. [Tr. 21]. Citing Social Security Ruling 83-12 and 83-14, the ALJ explained that when a claimant has nonexertional limitations, the medical-vocational rules are used as a framework for decisionmaking unless there is a rule that directs a conclusion of 'disabled' without considering the additional exertional and/or nonexertional limitations[.]" [Id.]. Based on this rule, the ALJ qualified her finding, stating that "the additional limitations have little or no effect on the occupational base of unskilled medium work." [Id.].

24

Although the ALJ found that there are jobs in the national economy that Plaintiff could perform, she did not account for the impact of Plaintiff's nonexertional mental impairments on the occupational work base of light work. The ALJ's RFC limited his interaction with the general public, and noted that contact with supervisors and co-workers should be "infrequent and casual." [Tr. 19]. Social Security Ruling 85-15 holds that "[t]he basic mental demands of competitive, remunerative, unskilled work include the abilities (on a sustained basis) to understand, carry out, and remember simple instructions; to respond appropriately to supervision, coworkers, and usual work situations; and to deal with changes in a routine work setting." 1985 WL 56857, at *4 (S.S.A. 1985). The agency has made clear that "[a] substantial loss of ability to meet any of these basic work-related activities would severely limit the potential occupational base." Id.

The discrepancy at issue lies in the requirement that a claimant "respond appropriately to supervision, coworkers, and usual work situations," SSR 85-15, 1985 WL 56857, at *4, and the ALJ's assessment that Plaintiff's "coworker/supervisor interaction is infrequent and casual." [Tr. 19]. This circuit has consistently held that "a limitation regarding a claimant's ability to interact with coworkers and supervisors conflicts with the basic requirements of unskilled work and significantly erodes the occupational base, precluding the use of the grids." Saturday v. Comm'r of Soc. Sec., No. 1:12-CV-2251, 2013 WL 6840355, at *7 (N.D. Ohio Dec. 27, 2013); Anthony v. Comm'r of Soc. Sec., No. 1:11 CV 1400, 2012 WL 4483790, at *27 (N.D. Ohio Sept. 27, 2012) ("A substantial loss of this ability to deal with supervisors and coworkers 'severely limits the potential occupational base.'") (quoting SSR 85-15, 1985 WL 56857, at *4); Boley v. Astrue, No. 11-10896, 2012 WL 680393, at *12 (E.D. Mich. Feb. 10, 2012) (internal citations omitted) ("Where an ALJ specifically limits a claimant's ability to interact with co-workers and

25

supervisors, a number of courts have held that such a limitation conflicts with the basic requirements of unskilled work and has the potential to significantly erode the occupational base.").

Therefore, the Court concurs in the Plaintiff's argument that the ALJ improperly relied on the Grids. The ALJ identified nonexertional limitations, specifically finding that Plaintiff would be limited in his abilities to interact with supervisors and coworkers. [See Tr. 19]. However, the ALJ never addressed Plaintiff's social limitations, making only a blanket statement that Plaintiff's "additional limitations have little or no effect on the occupational base of unskilled light work." [Tr. 21]. This case is similar to Anthony, where the court remanded because the ALJ "did not address why Plaintiff's moderate social limitations—accommodated in the RFC— do not erode the occupational base for light work. He simply made a blanket statement concluding Plaintiff's additional limitations have little or no effect, making no attempt to support his conclusion." 2012 WL 4483790, at *27. The Court finds the same here and remands this matter for consideration of further evidence in order to determine if work exists in the national economy that accommodates Plaintiff's RFC and vocational factors.

26

## VII.   CONCLUSION

Based upon the foregoing, it is hereby **RECOMMENDED**[3] that Plaintiff's Motion for Summary Judgment **[Doc. 16]** be **GRANTED in part and DENIED in part**, and that the Commissioner's Motion for Summary Judgment **[Doc. 18]** be **DENIED in part and GRANTED in part.**

The Court recommends remand, as follows:

1. The ALJ must reconsider step five of the disability analysis, namely whether work exists in the national economy that accommodates Plaintiff's RFC and vocational factors;

2. In so doing, the ALJ shall keep in mind that, due to the presence of Plaintiff's nonexertional limitations, the Grids serve only as a framework in determining disability.   The ALJ shall consider other evidence, including Vocational Expert opinion, in reaching a conclusion as to whether there is work in the national economy that comports with the Plaintiff's RFC and vocational factors.

Respectfully submitted,

*Bruce Guyton*

United States Magistrate Judge

---

[3] Any objections to this Report and Recommendation must be served and filed within fourteen (14) days after service of a copy of this recommended disposition on the objecting party.  Fed. R. Civ. P. 72(b)(2). Such objections must conform to the requirements of Rule 72(b), Federal Rules of Civil Procedure. Failure to file objections within the time specified waives the right to appeal the District Court's order. Thomas v. Arn, 474 U.S. 140, 106 S. Ct. 466 (1985).  The district court need not provide de novo review where objections to this report and recommendation are frivolous, conclusive or general.  Mira v. Marshall, 806 F.2d 636 (6th Cir. 1986).  Only specific objections are reserved for appellate review.  Smith v. Detroit Federation of Teachers, 829 F.2d 1370 (6th Cir. 1987).